## ESTATE OF WILLIAM P. FULLER, DECEASED.

[No. 9747; decided August 24, 1892.]

**Minor Heirs—Appointment of Attorney.**—The court will not exercise the power conferred upon it by section 1718 of the Code of Civil Procedure to appoint an attorney to represent minor heirs, except in cases where it is manifestly necessary; and in no case upon the suggestion of an executor or administrator, or other person in possible adverse interest to the parties sought to be represented.

**Minor Heirs—Duty of Their Attorney.**—It is the duty of an attorney appointed by the court for minor heirs to call to the court's attention the failure on the part of an executor to comply with any re-

quirement of the statute, and it is not for him to construe or inter-
pret apparently imperative clauses of the statute as merely directory.

Minor Heirs—Duty and Compensation of Attorney.—There is a wide-
difference between the attorney employed for an estate and an attor-
ney appointed by the court to represent minor heirs, and their com-
pensation is not to be measured alike.

Minor Heirs—Duty and Compensation of Attorney.—The attorney
for an executor is employed and is allowed compensation to manage
the legal affairs of the estate, and is accountable for the proper per-
formance of his duties as such attorney; he prepares all the papers and
appears as the principal representative in the court; while an attor-
ney appointed by the court to represent absent or minor heirs is an
auxiliary of the court, and his service is in a sense subordinate. He
acts as scrutinizer of the affairs of administration, a challenger and
critic of the management of the estate, and is expected to advise the
court from time to time as to any default or dereliction on the part of
the administrator or executor.

Minor Heirs — Compensation of Attorney.— The compensation
awarded an attorney appointed by the court to represent minor heirs
should be charged against the persons whom he represents and not
against the body of the estate, even though the executrix assents to the
charge; and such compensation should be in proportion to the interest
represented, although the estate as a whole may incidentally benefit
by the service.

Attorney Fees.—Opinions of Attorneys as to the Reasonableness of
demands for compensation for legal services afford no real assistance
to the court's judgment.

Timothy J. Lyons, for the applicant.

A. G. Booth, for the executrix.

John Flournoy, for one of the adult heirs.

COFFEY, J.   Mr. Lyons was appointed by an order of
this court, dated June 13, 1890, to represent certain minor
heirs of decedent in proceedings in probate of will and admin-
istration of estate in this department.

Prior to his appointment Mr. Lyons appears to have been
consulted by, and to have communicated with, the attorney
for the executrix, and to have acted in anticipation of his
appointment by the court.   This appointment seems to have
been assumed, notwithstanding the rule of this department
then, theretofore, and ever since hitherto in existence:

"The court will not make appointments of attorneys for
absent or minor heirs except in cases where it is manifestly

necessary, and in no case upon the suggestion of an executor or administrator, or other person in possible adverse interest to the party sought to be represented. The judge of the court prefers to use his own judgment, without being hampered by solicitation or importunity."

Despite this rule based upon reason and experience, Mr. Lyons applied to the court in a letter of which a copy is here inserted:

"San Francisco, June 4, 1890.

"Hon. J. V. Coffey,

"May it please your Honor:

"In the matter of the estate of W. P. Fuller, deceased (the will having been filed for probate a few days ago), there being a strong desire on the part of the attorney for the mother of the minor children to have me represent the mother as guardian of her children; but the mother being also the executrix under the will, her attorney did not think it advisable to have her placed on the record in a double—in fact a triple —position, as executrix, widow and guardian; and he would therefore prefer to have the attorney representing the minors' interest be the representative of the Court, and not as the representative of the mother as guardian. The attorney for the mother, Mr. A. G. Booth, called on me to-day and stated: That his firm filed the will for the widow and will have to represent her in that capacity; that the estate is a large one, and as there will perhaps be a number of interesting questions naturally arising under the will and certain partnership articles, the children should be separately represented, and he had hoped to have my help if possible; that he was Mrs. Fuller's attorney, but if guardianship proceedings were taken out he could not act, but would recommend and consent to me acting for the widow as guardian; that he would prefer, however, not to have guardianship opened, as it would place the widow in two or three opposing positions; that the appointee of the Court could protect the children as well as a guardian, and with more impartiality than as the representative of the widow; that at the end of the administration the widow can take up the keys as guardian under the appointment of the will, naturally, after the interests of all heirs and devisees have been settled in the administration and upon distribution.

Mr. Booth, knowing your Honor's disinclination to receive suggestions as to appointments, refrains from stating the matter to your Honor, which he would otherwise do, and called on me to explain that fact, and to also explain that he did not want to advise guardianship proceedings, because not deeming them necessary—at this time, at any rate—and something to be avoided, as a conflict of interests; unless your Honor appoints somebody for the children. I have taken the liberty to state this matter to your Honor, although I have always refused to say anything (which I might have done in some cases) in any matter that might appear to be even an intimation of a desire to have your Honor set aside your general rule as to the matter of appointments.

''In this case I have only done so because if the attorney for the mother consented to have her apply for guardianship, he is willing to have it understood that he would recommend my appearance as her attorney; and he will say, if your Honor cares to set aside your rule, that it is the wish and desire that I may appear for the children. Of course I have submitted this letter, hoping your Honor will believe that I regret the appearance of it being an intrusion on what is known to be a well recognized rule of action by your Honor in the awkward duty of appointments, where you can rarely see the true inwardness of any particular desire or suggestion of this kind. The matter came to me in such a complimentary way that I have not been able to resist what may appear a great impertinence; but I trust your Honor believes I desire you to act perfectly free.

''Very respectfully,
''(Signed)   TIMOTHY J. LYONS.''

''The foregoing is a true copy of the letter received by me from Mr. Lyons.                    J. V. COFFEY.''

Court Exhibit X, offered and read in evidence at 4:30 P. M., July 21, 1892.

If proof were necessary to show the propriety of this rule, it is afforded by the circumstances of this claim for compensation.

Mr. Lyons was appointed in deference to the supposed desires of the family, as indicated by their attorney; although

the widow executrix testified upon the settlement of the account that she knew nothing about his appointment until his appearance in court (June 13, 1890), and expressly repudiated all responsibility for the suggestion of his name to the court or for the acts of her attorney antecedent to the appointment; but the letter hereinabove inserted speaks for itself, and her attorney has not denied the substance of its statements.

Mr. Lyons has filed a voluminous document entitled "Verified statement of services rendered by Timothy J. Lyons as attorney appointed to represent the minor children of decedent."

This is doubtless designed to comply with the rule of this department requiring applications for allowance of counsel fees to be made in open court, and obliging attorneys to present with their applications a verified and summarized statement in writing of services rendered, and exacting that notice be given to all parties in interest.

I have examined carefully this document, which is largely in the nature of an argument in support of the allowance asked, and is devoted mainly to the work done in and about the sale and confirmation of the partnership interest in the business of Whittier, Fuller & Co., to W. P. Fuller, Jr.

Mr. Lyons rendered valuable service in that connection and is to be commended and compensated therefor; but I feel free to say that his estimate of his share in the salvation of the estate from the foray of Whittier is exaggerated. He did his work well; but possibly the court would have resisted the raid of the surviving partner without the aid of any appointed attorney, as it has done in other cases, sometimes even against the assent of appointed attorneys.

Be this as it may, it is far from the purpose to depreciate the value, much less to disparage the character, of the services rendered by Mr. Lyons, and his ability as an attorney was attested by the act of appointment.

It seldom falls to the lot of the court, indeed, to bestow so signal a credential of capacity or character as was conferred in this case; and, whatever difference of opinion may exist between court and counsel as to the amount of allowance that should be granted, it does not argue a loss or lack of confi-

dence in the court's appointee, but merely an inability of the court to accept the large views of lawyers who travel on the broad gauge of professional practice instead of being confined to the narrow rut of official emolument.

On the hearing of the account the court adverted to the omission of the executrix to file an exhibit under section 1622, Code of Civil Procedure, and also to her failure to file the account provided for by section 1628, Code of Civil Procedure. No sufficient explanation or excuse was vouchsafed for these acts of neglect on the part of the executrix or her attorney, and the counsel, who by courtesy appeared for the applicant here, seemed to treat these matters lightly and suggested that the bar generally regarded these provisions of the statute as merely directory. That may be, but among the duties of an appointed attorney an important one is to prevent such slips on the part of the court's officers and to call to the attention of the court a failure to pursue the prescriptions of the statute, and it is not for him to construe or interpret apparently imperative clauses of the code as "merely directory." It is to be presumed, notwithstanding any loose general practice to the contrary, that it is the purpose of the law to compel its ministers to act punctually and promptly, and not to wrest its provisions from their obvious meaning to suit their own private interest or personal convenience.

In this case much mischievous misunderstanding might have been avoided if the sections cited had been complied with according to their letter and spirit; and the court would have had an opportunity of arresting by its action some of the acts complained of by the appointed attorney in his very rigorous examination of the executrix. But there is reason to fear that the relations between that attorney and the executrix and her managing son, W. P. Fuller, Jr., were then so amicable as to deter him from demanding that she furnish the exhibit required by section 1622, Code of Civil Procedure, and the first annual account under section 1628, Code of Civil Procedure, and this shows strongly the sound reason of the rule of this department against interference by the administrator or executor with the prerogative of the court in making appointments. Instead of holding the executrix at arm's-length and taking care that she should obey the obli-

gations of the statute governing her office, the appointed at-
torney was expecting to be employed directly by her in liti-
gation outside this department in conjunction with other
counsel (whose claims have been disallowed in toto) and had
actually accepted a "retainer" of $500 from her managing
son, W. P. Fuller, Jr., in such behalf; this sum has been
disallowed, also, by the court, as of course there could be no
such thing as a retainer to an appointed attorney at any time,
much less at a point nine months after he was intrusted by
the court with the appointment; and there was no authority
or order for its payment in any other function.    Clearly
there is a misconception of duty here, either on the part of
the counsel or the court, for to the court it seems that if the
counsel had not been affected by the prospect of employment
in the litigation outside the probate department, he would
have been disposed to demand a more careful compliance with
the law by the executrix; but his feelings towards her were
softened by the fact that she was, in a measure, the source of
his appointment, and the further fact that he had reason to
believe that he was retained by her managing son, W. P. Ful-
ler, Jr., in litigation in another court or department; and his
application for so large a sum, by way of compensation, seems
to me to be based upon services rendered in that regard.    The
purely probate services cannot be appraised by me at any
such figure.    It is suggested that larger fees have been
granted in other estates; but counsel could not find a case in
which an attorney occupying the relation of Mr. Lyons to
this estate received so colossal a grant; although, in a man-
ner more ingenious than ingenuous, instances were cited
where principal attorneys received apparently large fees; but
the allowances to appointed attorneys were not and could not
have been brought forward, although such attorneys have
been well paid; but the difference between the situation of
an attorney employed for the estate and charged with the
major or entire responsibility of its administration, and an
appointed attorney answerable only to the court whose agent
he is, is very great, and their compensation is not to be meas-
ured alike; although there may be instances in which the ap-
pointed attorney is more competent than the attorney em-
ployed by an administrator or executor (no such suggestion

is made in this estate) ; but usually the appointed attorney is regarded as an intruder, and is by no means welcome, but accepted surlily because he is supposed to be a part and parcel of probate patronage, which the court desires to dispense at the cost of an inheritance, and not in the exercise of a prerogative which should be jealously guarded and most discreetly exercised.

The attorney for the minor heirs requests that whatever award the court may make to him be charged against the estate; and the executrix, speaking through her counsel, assents to this request; but the court declines to charge the body of the estate for a service performed for certain specified heirs. It is said that the estate as a whole was benefited by the appointment and the service rendered in pursuance thereof. This is an incident naturally flowing from the appointment, and should not serve as an excuse for an appropriation larger than would be deemed reasonable or proportional to the interest specifically represented. Mr. Lyons was not, and could not have been, appointed to represent the estate. The attorney for the executrix was employed and is allowed compensation to manage the legal affairs of the estate. He is accountable for the proper performance of his duties as such attorney. He prepares all the papers, appears as the principal representative in the court, is looked to by the court as responsible for the conduct of the legal affairs, while the appointed attorney is an auxiliary of the court, and his service is, in a sense, subordinate. He acts as a scrutineer of the affairs of administration, a challenger and critic of the management of the estate, and is expected to advise the court, from time to time, as to any default or dereliction on the part of the administrator or executor. In this way his relation is subsidiary, and he can hardly hope to hold himself out as entitled to an amount of allowance equal to the principal attorney, let alone, as in this case, to double that sum. Mr. Lyons, appointed attorney, asks for $15,000; Mr. Booth, attorney employed for estate and executrix, is content with one-half that amount—$7,500. Mr. Booth considers that Mr. Lyons should receive no more than $3,000; Mr. John Flournoy, representing by employment an adult absent heir, thinks $1,800 a good figure. Mr. Flournoy's estimate is too low and,

perhaps, made without an adequate knowledge of the labors of Mr. Lyons. Mr. Booth's figures are fairer and based upon more accurate acquaintance with the character and value of the attorney's work; but still he is under the mark. The court invited the opinion of these gentlemen because they were engaged in the estate, and, inasmuch as they objected to the allowance asked, it was their right and duty to speak out. It has been intimated that, if the practice of this department were not opposed to it, attorneys might be called in to prove up the reasonableness of the appointed attorney's application. No doubt. Nothing could better exemplify the inutility of such testimony than the ease with which professional gentlemen can be found to support such claims by expert evidence. This department of the superior court has steadily set its face against such testimony for, at least, two reasons: First, that it affords no real assistance to the Court's judgment in the premises, and, while honestly given, is nearly always addressed to the court in a spirit of complaisance to gratify the counsel who present it; and, secondly, because it seems to me to lower the standard of the bar to be so ready to engage in sizing up the claims of their brethren, substituting their own judgment upon hypotheses for that of the court of award upon facts which are, or ought to be, within its actual knowledge.

In answer to the court's intimation that the amount of this application equaled the salary of a judge of the superior court for three years and nine months, the usual response was made as to an underpaid judiciary. I question if there be any validity in this stock argument. It is curious to observe, however, that there are so many lawyers who seek and sometimes receive fabulous fees and yet are willing to surrender a lucrative practice for a slender salaried situation on the bench.

But this is aside. The question here is: What is this appointed attorney applicant entitled to for services rendered in this administration? The great item he lays stress upon is the matter of the proceedings upon the confirmation of the sale of the interest in the partnership to Mr. W. P. Fuller, Jr., March 11 and 12, 1891, and to which the greater part of

his statement of services is argumentatively devoted; but the accident which made him the central figure in the probate forum upon that occasion is not to be esteemed as of so costly a consideration as would appear from his recital; for it seems from the record that the court would have proceeded whether there was any attorney or not; indeed, it could not dutifully have paltered with the crisis, if it desired to do so; and so the court repeatedly said in the course of the discussion forced upon it.

Mr. Lyons has filed a supplemental statement of services rendered subsequent to the filing of the amended account of the executrix, and it betokens exquisite care and arduous labor, but I do not understand that he claims additional compensation therefor—in fact, I believe he expressly disclaimed any extra allowance for this work of supererogation.

Looking over the whole ground with an anxious desire to mete out justice to an attorney of approved ability and more than common industry, as well as peculiar proficiency in probate practice, I find it impossible to come to an agreement with him as to the measure of his compensation in this case. In the circumstances he could not have earned that amount. And that is the test: What did he earn?

"The attorney may receive a fee, to be fixed by the court, for his services," to be charged to the party represented by the attorney: Code Civ. Proc., sec. 1718.

The fees paid by the junior W. P. Fuller to outside attorneys, without authority, and for services other and different, and upon a contingent basis, and totally disallowed by this court, afford no criterion for the charge made or allowance asked by the appointed attorney.

In the judgment of this court, an adequate allowance to him would be in the sum of $4,750, and that amount is allowed and awarded in satisfaction of his services.